Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/18/2023 08:04 AM CDT

State of Nebraska, appellee, v.
Brian M. Betts, appellant.

___ N.W.2d ___

Filed April 11, 2023.    Nos. A-22-094, A-22-096.

1. **Effectiveness of Counsel: Constitutional Law: Statutes: Records:
   Appeal and Error.** Whether a claim of ineffective assistance of trial
   counsel can be determined on direct appeal presents a question of law,
   which turns upon the sufficiency of the record to address the claim
   without an evidentiary hearing or whether the claim rests solely on the
   interpretation of a statute or constitutional requirements.
2. **Effectiveness of Counsel: Appeal and Error.** In reviewing a claim
   of ineffective assistance of trial counsel on direct appeal, an appellate
   court determines as a matter of law whether the record conclusively
   shows that (1) a defense counsel's performance was deficient or (2)
   a defendant was or was not prejudiced by a defense counsel's alleged
   deficient performance.
3. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective
   assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104
   S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his
   or her counsel's performance was deficient and that this deficient per-
   formance actually prejudiced the defendant's defense.
4. **____: ____.** To show that counsel's performance was deficient, the
   defendant must show counsel's performance did not equal that of a law-
   yer with ordinary training and skill in criminal law. To show prejudice
   under the prejudice component of the *Strickland v. Washington*, 466
   U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) test, the defendant
   must demonstrate a reasonable probability that but for his or her coun-
   sel's deficient performance, the result of the proceeding would have
   been different.
5. **Convictions: Effectiveness of Counsel: Pleas: Proof.** When a con-
   viction is based upon a plea of no contest, the prejudice require-
   ment for an ineffective assistance of counsel claim is satisfied if the

defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest.

6. **Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.

7. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding.

8. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

9. **Effectiveness of Counsel: Appeal and Error.** Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

10. **Effectiveness of Counsel: Witnesses: Appeal and Error.** When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record.

Appeals from the District Court for Nemaha County: Julie D. Smith, Judge. Affirmed.

Lindy L. Mahoney, of Nestor & Mercure Attorneys, for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

Pirtle, Chief Judge, and Riedmann and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

Brian M. Betts was charged in the district court for Nemaha County with a total of 29 felony counts distributed

between two separate criminal cases. Betts resolved the two cases through a global plea agreement in which he entered a plea of no contest to five counts of first degree sexual assault of a child, each a Class IB felony; six counts of visual depiction of sexually explicit conduct, each a Class ID felony; and one count of possession of a deadly weapon by a prohibited person, a Class ID felony. In this consolidated appeal, Betts asserts that his trial counsel was ineffective for failing to file pretrial motions, failing to depose key witnesses, and demonstrating a general inadvertence that, according to Betts, pressured him into accepting the global plea agreement. Upon our review, we affirm Betts' convictions and sentences in both cases.

BACKGROUND

In case No. A-22-094, on February 4, 2019, Betts was originally charged by information with 4 counts of first degree sexual assault of a child, each a Class IB felony; 1 count of possession of a firearm by a prohibited person, a Class ID felony; 10 counts of visual depiction of sexually explicit conduct, each a Class ID felony; and 1 count of possession of a controlled substance, a Class IV felony. On April 8, the court granted defense counsel's motion to take depositions of the alleged victim in the case, M.C., as well as two other potential trial witnesses. The court granted another defense motion to take the depositions of two law enforcement officers on October 23.

On November 13, 2019, Betts appeared with counsel and waived his right to a jury trial. The court accepted his waiver and scheduled a bench trial for February 24, 2020. The State planned to have a hearing under Neb. Rev. Stat. § 27-414 (Reissue 2016) to introduce evidence from another alleged victim of Betts, L.M.I., on February 12. However, defense counsel moved to continue the proceedings and requested leave to depose L.M.I. prior to any evidentiary hearing being held.

On March 11, 2020, the State filed an information in case No. A-22-096 charging Betts with six counts of first degree sexual assault of a child, each a Class IB felony, and seven counts of visual depiction of sexually explicit conduct, each a Class ID felony. L.M.I. was the alleged victim in this case.

During the arraignment in case No. A-22-096, the district court addressed Betts' pro se request that he be appointed with new counsel. Defense counsel did not contest Betts' request. In fact, counsel made an oral motion to withdraw due to the serious nature of the pending charges and the possible penalties that Betts was facing. Defense counsel suggested that the Nebraska Commission on Public Advocacy be contacted to see if it would be willing to accept Betts' cases. The court took the matter under advisement, instructing counsel to check with the Nebraska Commission on Public Advocacy about taking the cases.

On April 8, 2020, it was reported to the court that the Nebraska Commission on Public Advocacy was unable to take Betts' cases due to a lack of available resources. The court determined not to make any changes to Betts' previously appointed defense counsel. Counsel was then granted leave to take a deposition of another potential trial witness. At this same time, the district court addressed Betts' pro se motions asking that the prosecutor be recused and that he be allowed to withdraw his waiver for a jury trial. The court continued the cases so Betts could present evidence in support of his recusal motion and so that the court could further research the topic of rescinding a jury trial waiver before making a decision. The cases were continued, and a hearing on Betts' multiple motions was set for June 4.

On June 4, 2020, the parties reported to the court that a plea agreement had been reached involving both cases. In case No. A-22-094, Betts agreed to enter a plea of guilty or no contest to two counts of first degree sexual assault of a child, one count of possession of a firearm by a prohibited person, and three counts of visual depiction of sexually

explicit conduct. The State agreed to dismiss two counts of first degree sexual assault of a child, seven counts of visual depiction of sexually explicit conduct, and one count of possession of a controlled substance. In case No. A-22-096, Betts agreed to enter a plea of guilty or no contest to three counts of first degree sexual assault of a child and three counts of visual depiction of sexually explicit conduct. The State agreed to dismiss the remaining counts. Additionally, as a part of the plea agreement, the State agreed to jointly recommend that the sentence would allow Betts to be eligible for parole at the age of 70 and that the victims in both cases would be allowed to speak at sentencing. The court then had the following discussion with Betts:

[THE COURT:] Do you understand that if you plead guilty or no contest you would not have a trial in either case and you would be giving up the rights that I've just explained?

[BETTS:] Yes, I do.

THE COURT: Is it your intention to give up those rights and enter into the plea agreement?

[BETTS:] Yes.

THE COURT: You will retain your right to an attorney, your right to a reasonable bail, and your right to appeal any final decision of this Court.

If you are not a United States citizen, you are hereby advised that conviction of the offenses for which you have been charged may have the consequence of removal from the United States or denial of naturalization pursuant to the laws of the United States.

If I find that someone has suffered a loss as a result of your crime, such as medical bills or something like that, and I find that you have the ability to pay, the Court could order you to pay restitution to reimburse the victims. Do you understand that?

[BETTS:] Yes, I do.

THE COURT: A guilty or no contest plea to these charges will cause you to be subject to the Nebraska Sex Offender Registration Act for the period of the rest of your life during which you would have lifetime registration and lifetime supervision. It also would subject you to the Nebraska Sex Offender Commitment Act. Except during any period of incarceration, you would be required to register with the county sheriff where you reside within three working days of your release from incarceration and, again, you would have to report any changes in your address for the rest of your life. If you fail to register, you could be convicted of another crime.

At the end of your period of incarceration, if it is determined that you qualify as a dangerous sex offender, you could be civilly committed for treatment until such time as you are determined to be ready for release.

Do you understand that?

[BETTS:] Yes, I do.

THE COURT: . . . Betts, have you had enough time to talk to your attorney about these two cases?

[BETTS:] Yes.

THE COURT: Have you told your attorney everything you know about these cases and discussed all possible defenses you might have?

[BETTS:] Yes.

THE COURT: Do you want any more time to talk to your attorney before you change your pleas?

[BETTS:] No.

THE COURT: Are you satisfied with the job that your attorney has done for you on these two cases?

[BETTS:] Yeah. I mean, yes.

The court found that Betts entered his pleas of no contest freely, voluntarily, knowingly, and intelligently. All motions filed in April 2019 were withdrawn.

Factual bases provided for each of the cases explained that the Nebraska State Patrol was notified by "Google" about

an account that had inappropriate conduct on it in November 2018. The account was found to belong to Betts and contained nude photographs of a minor. Investigators interviewed Betts in Auburn, Nebraska, about the account. During this interview, Betts admitted that he had sexual contact with a minor and had taken photographs of that contact. Betts identified his victim as M.C., born in 2004, with whom he lived with as a parenting figure due to his relationship with her mother. After getting a search warrant for Betts' electronic media information and residence, investigators found numerous photographs of pornographic material, including pornographic material involving minors and, specifically, pornographic photographs of M.C., on a laptop found in his personal shop, on a hard drive, and on several cell phones belonging to Betts. Through an investigation, law enforcement officers discovered that the photographs also featured L.M.I., another minor who had lived in the home with Betts. L.M.I., born in 2006, was Betts' stepdaughter from a previous relationship.

M.C. was interviewed at a child advocacy center. She told investigators that Betts had sexually assaulted her multiple times when M.C. was 12 and 13 years old and that he took photographs of the assaults. L.M.I. was also interviewed at the child advocacy center. She reported that she was first sexually assaulted by Betts when she was 7 years old in 2013. L.M.I. then went to live with another parent until 2018. L.M.I. reported that when she returned to Betts' home in 2018, he again sexually assaulted her on several occasions. She also stated that Betts took photographs of the sexual assaults.

A handgun was found during a search of Betts' home. Witnesses informed officers that the gun belonged to Betts. Officers discovered that Betts was a convicted felon who was prohibited from owning a gun. Through all the events reported, Betts was over the age of 19, and all the events occurred in Nemaha County, Nebraska. As part of the factual basis, the State offered three of the pornographic photographs of M.C. and six of the pornographic photographs of L.M.I. found

in Betts' possession. Some of these photographs depicted M.C. and L.M.I. involved in sexual acts with adult male genitalia. The court received all exhibits under seal.

The court accepted the factual bases, and it found that Betts understood the charges, the possible penalties, and his rights and that he waived those rights freely, voluntarily, knowingly, and intelligently. A presentence investigation, including a sex offender specific evaluation and victim impact statements, was ordered.

At the sentencing hearing on August 11, 2020, both M.C. and L.M.I. provided remarks to the court. The court reviewed and considered the circumstances surrounding the offenses, Betts' criminal record, the sex offender specific evaluation, and the risk factors within the "LS/CMI index." The court described the photographic exhibits from the factual bases as "sexual torture." The court noted that Betts seemed to act as if he were the victim in this case, instead of taking responsibility. It was calculated that Betts had 632 days' credit in case No. A-22-094 and 183 days' credit in case No. A-22-096 for time served. Both cases involved a combination of Class IB and Class ID felonies. For each Class IB felony conviction, Betts was sentenced to 23 to 100 years' imprisonment with a mandatory minimum of 15 years' imprisonment. For each Class ID felony conviction, Betts was sentenced to a mandatory minimum 3 years to 10 years' imprisonment. All sentences were ordered to run concurrently.

Betts filed these appeals following an order entitling him to postconviction relief in the form of a new direct appeal after trial counsel failed to perfect the appeals within 30 days of the imposition of his sentences.

## ASSIGNMENTS OF ERROR

Betts assigns that his trial counsel was ineffective for (1) failing to file pretrial motions, (2) failing to depose key witnesses, and (3) exhibiting a general inadvertence that pressured Betts to enter into a plea agreement to resolve his cases.

## STANDARD OF REVIEW

[1,2] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirements. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## ANALYSIS

[3-6] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Lessley, supra.* When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

[7-9] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner, supra*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

*Failure to File Pretrial Motions
and General Inadvertence.*

Betts' first assignment of error claims his trial counsel was ineffective "by failing to adequately prepare for trial by utilizing pre-trial motions." His third assignment of error alleges trial counsel was ineffective by "demonstrating overall inadvertence that caused legitimate concerns about . . . Betts' likelihood of success at trial." The Nebraska Supreme Court has held that when raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). An appellate court should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance. *Id.* Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance. *Id.* Betts' first and third assignments of error both fail to meet this requirement.

Betts broadly asserts that his trial counsel was ineffective for failing to file pretrial motions. In his assignments of error, Betts fails to specify which pretrial motions his trial counsel should have filed. We will not scour the argument section of Betts' brief in search of the answer. As a result, Betts' first assignment of error is insufficiently stated to allow appellate review.

Similarly, Betts' assignment that his trial counsel demonstrated "overall inadvertence" is little more than an alternative method of generally stating that trial counsel was ineffective. This assignment does not specify how trial counsel was inadvertent or what alleged inadvertent acts or omissions were deficient. Again, we will not scour the argument section to search for the specific acts that are claimed to be deficient. Betts' third assignment of error is insufficiently stated to allow appellate review.

*Failure to Depose Witnesses.*

[10] Betts also claims that his trial counsel was ineffective for failing to take depositions of key witnesses. This claim is sufficiently pled, but cannot be resolved on the record before us. When the claim of ineffective assistance on direct appeal involves uncalled witnesses, vague assertions that counsel was deficient for failing to call "witnesses" are little more than placeholders and do not sufficiently preserve the claim. *State v. Blake, supra*. However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *Id.* It is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *Id.* Such specificity is necessary so that the postconviction court may later identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal. *Id.*

In *State v. Blake*, 310 Neb. 769, 799, 969 N.W.2d 399, 421-22 (2022), the Supreme Court noted that the defendant's "assignment of error and supporting argument specified the names of the witnesses he claims that, if investigated, would have supported his innocence." This statement, coupled with the court's prior statement that "[i]t is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel," *id*. at 798-99, 969 N.W.2d at 421, leads us to conclude that in the scenario of failure to investigate, depose, or call witnesses, it is not critical that the uncalled witnesses be named or specifically identified in the assignment of error. We recognize that in *Blake*, the uncalled witnesses were named in the assignment of error and in the argument. Here, the undeposed witnesses were not named in an assignment of error. However, they were specifically named "on direct appeal" in the corresponding argument section. This argument section is clearly limited to this issue, and it readily identifies the witnesses that trial counsel did not depose. Therefore, we find that in this scenario, we are not in the position of scouring the record to try to define the nature of the ineffectiveness claim. Unlike the other two claims of ineffective assistance stated in appellant's brief herein, this claim is readily discernible. See, also, *State v. Roebuck*, 31 Neb. App. 67, 976 N.W.2d 218 (2022).

Betts asserts that trial counsel took the depositions of M.C. and M.C.'s mother but failed to take the depositions of any law enforcement officer, investigator, or forensic analyst who worked on the case. Betts then lists the names of 10 individuals that were named as witnesses and subpoenaed by the State but were not deposed by trial counsel. Trial counsel was granted leave by the court to depose these witnesses, but did not conduct the depositions prior to Betts' entering into the plea agreement. Though Betts does not articulate what the depositions of these individuals would have produced, he has

identified the witnesses he asserts trial counsel should have deposed with enough specificity to preserve his claim for postconviction relief. Because trial counsel's decision not to depose these individuals is a matter of trial strategy, we cannot resolve this issue with the record before us.

## CONCLUSION

For the reasons stated above, we affirm Betts' convictions and sentences.

Affirmed.