IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DANIELSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TANNER A. DANIELSON, APPELLANT.

Filed April 16, 2024.    No. A-23-780.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Desirae M. Solomon for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Tanner A. Danielson was convicted in the district court for Lancaster County on one count of attempted kidnapping and one count of first degree sexual assault. He was sentenced to 40 to 50 years' imprisonment on the attempted kidnapping conviction and 30 to 40 years' imprisonment on the sexual assault conviction. These sentences were ordered to run consecutively. On appeal, Danielson assigns his trial counsel was ineffective and that the district court abused its discretion by imposing excessive sentences. For the following reasons, we affirm.

## II. BACKGROUND

Leading to the relevant events, Danielson was involved in transporting large amounts of marijuana from Colorado to Nebraska. After one such trip from Colorado during the summer of 2022, Danielson stored approximately 60 pounds of marijuana in his house until it could be distributed to local drug dealers. While this marijuana was in his house, Danielson went on

vacation. When he returned, he found that his house had been broken into and the marijuana stolen. Danielson was told that he needed to replace the value of the marijuana, or his life, and the life of his family, would be put at risk.

Through some unidentified means, Danielson identified Elijah Berlage as one of the individuals who had broken into his house. On July 28, 2022, Danielson and another individual, Austin Widhalm, lured Berlage and K.D., an 18-year-old woman, to a welding shop in Lincoln, Nebraska, by offering to sell them cocaine. When Berlage and K.D. entered the building, Berlage was hit in the head with a wrench, handcuffed, welded to a table, and tortured. Over the course of approximately 12 hours, Berlage was forced to hang by his handcuffs via a forklift, branded with pieces of metal that bore the word "thief," burned with a blowtorch, and beaten. Additionally, Danielson put a gun in Berlage's mouth and forced him to consume approximately 100 doses of LSD. Eventually, Berlage was driven to another location and bound to a tree. Danielson told him that if he escaped before they returned, his family would be killed. After several hours, Berlage was able to escape. He was later found walking along a road by the Gage County sheriff's office to whom he reported the abuse.

While Berlage was being beaten and tortured, K.D. was still present. At one point, she was allowed to go to the bathroom. But while walking back to the building's main room, Danielson stopped her. He proceeded to pull down her pants, bend her over the hood of a vehicle, and sexually assault her. Danielson later drove K.D. home and threatened to kill her if she told anyone about what happened.

After Berlage informed law enforcement about the incident, he and K.D. were able to identify Danielson and Widhalm as the perpetrators. Law enforcement then found the welding shop where they discovered home-made branding tools that were fashioned with the word "thief." Then while attempting to find Widhalm at his residence, they discovered Berlage's vehicle in the driveway. Eventually, Widhalm agreed to cooperate with the investigation against Danielson in exchange for a plea agreement. Widhalm then led law enforcement to the location of the tree that Berlage was bound to where they discovered the straps still wrapped around the tree.

In an interview with law enforcement, Danielson confirmed that he, Widhalm, Berlage, and K.D. had been in the shop the night of the incident. While he denied hurting Berlage, he admitted to having sex with K.D. on the hood of the car, but claimed it was consensual. During this interview, Danielson also informed officers that he had previously suffered a traumatic brain injury (TBI). He stated that in 2014, he was in a motorcycle accident which he claimed caused "really bad brain damage."

On August 1, 2022, Danielson was charged with several felonies which were later amended on January 27, 2023. The amended information charged him with second degree assault, use of a deadly weapon to commit a felony, kidnapping, and first degree sexual assault. Pursuant to a plea agreement, on June 26, a second amended information was filed which charged Danielson with attempted kidnapping and first degree sexual assault, both Class II felonies.

On June 28, 2023, a plea hearing was held. During this hearing, the court read Danielson's charges and explained the possible punishments he faced for each charge. Danielson proceeded to plead no contest to the two charges. The court then found Danielson competent to proceed, advised him of his rights, and ensured that he understood he was waiving those rights by accepting the plea agreement. In doing so, the court specifically advised Danielson that he was giving up his right to

challenge any statements he made to law enforcement. Additionally, when prompted by the court, Danielson stated that no promises had been made to him regarding his eventual sentence and that he was satisfied with his counsel's performance. The court accepted Danielson's no contest plea, revoked his bond, ordered the completion of a presentence investigation report (PSI), and set a sentencing date.

On September 6, 2023, Danielson's sentencing hearing was held, and he and his attorney were given the opportunity to address the court. Danielson's attorney indicated that Danielson was forced to torture Berlage by the people he transported marijuana for. He continued to explain that Danielson was a hardworking man that had led a relatively law-abiding life until his involvement in the underlying events. He also pointed out that Danielson was high on cocaine and marijuana when the events occurred and had since sought treatment for his addictions. Danielson then addressed the court and reported that his actions were done out of fear and did not reflect who he truly was. When it was the State's turn to address the court, the State questioned the veracity of Danielson's claim that torturing someone and sexually assaulting another was necessary to protect himself and his family. The State then requested that Danielson be given a very long sentence due to the physical and emotional damage suffered by his victims and the threat he posed to the public.

Before levying its sentence, the district court stated it had reviewed the PSI and indicated this was "one of the most heinous and horrific factual scenarios" that it had seen. After acknowledging that many of the character letters submitted on Danielson's behalf generally claimed that his actions did not represent his true character, the court brought forth Danielson's criminal history. This history displayed two convictions from 2011 and 2016 where Danielson assaulted and strangled his child's mother. The court stated that a term of imprisonment was necessary for the protection of the public and that a lesser sentence would depreciate the seriousness of the crimes and promote disrespect for the law. The court sentenced Danielson to 40 to 50 years' imprisonment on the attempted kidnapping conviction and 30 to 40 years' imprisonment on the sexual assault conviction. The court ordered the sentences to run consecutively.

### III. ASSIGNMENTS OF ERROR

Restated, Danielson assigns his trial counsel was ineffective for (1) failing to file a motion to suppress to exclude his statements made to law enforcement when he knew that Danielson had a TBI that affected his ability to voluntarily waive his rights; (2) failing to investigate and advise him about pleading not guilty by reason of insanity in regard to his TBI; (3) failing to investigate or advise him on the defense of temporary diminished mental capacity in regard to his TBI; (4) failing to investigate and advise him to pursue a competency evaluation to determine if he was competent to enter a plea or stand trial; (5) promising him that the court would sentence him to a specific low term of incarceration if he entered a plea; and (6) advising him to answer the court's questions untruthfully at the plea hearing.

Danielson also assigns the district court abused its discretion by imposing excessive sentences.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirements. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022); *State v. Betts*, 31 Neb. App. 737, 989 N.W.2d 441 (2023). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Betts, supra*. The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Betts, supra*. To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Betts, supra*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### (a) Failure to File Motion to Suppress

Danielson claims that his trial counsel was ineffective in failing to advise him that his statements to law enforcement could be suppressed and by failing to file a motion to suppress his statements. He contends that a motion to suppress would have been successful because his TBI diminished his mental capacities to the extent that he was unable to waive his *Miranda* rights voluntarily and intelligently. He essentially argues that he was prejudiced by these failures because

without his statements to law enforcement, the State would have been unable to prove the charges against him.

We determine the record refutes these alleged failures of Danielson's trial counsel. First, the record shows that Danielson was made aware that he could challenge his statements made to law enforcement. At the plea hearing, the district court explicitly informed Danielson that he was waiving his right to challenge such statements by pleading no contest:

> THE COURT: Okay. If you have made any statements, admissions or confessions to the police or to anyone else about this case, you are entitled to a separate hearing to have me determine whether that statement, admission or confession was freely, voluntarily, knowingly and intelligently made. And if I found that any one or more of these items was missing, that statement, admission or confession could not be used against you at the time of trial. But, if I accept your pleas, you are giving up your right to this type of a hearing. Do you understand that?
>
> [DANIELSON]: I do, Your Honor.

Upon being informed that he was able to challenge his statements made to law enforcement, Danielson chose to waive that right. As such, we determine there is not a reasonable probability that the outcome of the proceedings would have been different if his trial counsel had informed him of the same information.

Further, we determine that Danielson was not prejudiced by his counsel's failure to file a motion to suppress. When the evidence arrayed against a defendant is "overwhelming," prejudice from counsel's alleged errors becomes difficult to prove. *State v. Smith*, 19 Neb. App. 708, 811 N.W.2d 720, *affirmed on other grounds*, 284 Neb. 636, 822 N.W.2d 401 (2012). In this matter, the State possessed the testimony of Berlage, K.D., and Widhalm who all placed Danielson at the scene of the crimes and corroborated the accounts of Berlage's torture and K.D.'s sexual assault. Further, there was evidence of Berlage's car at Widhalm's residence, strands of K.D.'s hair at the workshop, the branding tools used to brand Berlage, the straps used to tie Berlage to the tree, and photographs of Berlage's physical injuries. With this evidence in hand, Danielson does not provide sufficient reasons as to why the suppression of his statements, where he only admitted to being at the location and having consensual sex with K.D., would have resulted in him insisting on going to trial rather than pleading no contest. As such, we believe the evidence possessed by the State was beyond sufficient to convict Danielson of his charges even if Danielson's attorney had filed a motion to suppress that successfully excluded his statements. Therefore, we conclude the record demonstrates that Danielson was not prejudiced by his attorney not filing a motion to suppress.

### (b) Failure to Advise About and
### Pursue Insanity Defense

Danielson next claims his trial counsel was ineffective because he did not advise him about pursuing an insanity defense, did not have a psychological examination done to determine the effects of his TBI, and did not take the necessary step of filing a notice that Danielson sought to pursue an insanity defense.

The defense of insanity has two elements: (1) that the defendant had a mental disease at the time of the acts charged; and (2) that this mental disease impaired his ability to such an extent

that either (i) he did not understand the nature and consequences of what he was doing; or (ii) he did not know the difference between right and wrong with respect to what he was doing. *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023). Additionally, Neb. Rev. Stat. § 29-2203(1) (Reissue 2016) provides that:

> Any person prosecuted for an offense may plead that he or she is not responsible by reason of insanity at the time of the offense and in such case the burden shall be upon the defendant to prove the defense of not responsible by reason of insanity by a preponderance of the evidence. No evidence offered by the defendant for the purpose of establishing his or her insanity shall be admitted in the trial of the case unless notice of intention to rely upon the insanity defense is given to the county attorney and filed with the court not later than sixty days before trial.

We determine the record is insufficient to adequately review this claim. There is no information within the record pertaining to Danielson's mental state at the time of the acts charged and whether he understood the nature and consequences of what he was doing or the difference between right and wrong with respect to what he was doing. Further, there is nothing in the record about Danielson's trial counsel discussing, or not discussing, the insanity defense with him. Therefore, we conclude that the record is insufficient to address this assignment on direct appeal.

### (c) Failure to Advise About Temporary Diminished Mental Capacity Defense

Danielson next assigns his trial counsel was ineffective for failing to investigate and advise him on the defense of temporary diminished mental capacity. He argues that when he committed the crimes charged, he had a diminished mental capacity to understand the probable consequences of his actions due to his TBI. With this, he asserts his trial counsel should have obtained psychological and neurological testing to determine the effects his TBI had on his decision making and conduct.

The Nebraska Supreme Court has held that separate and apart from an insanity defense, a defendant may, with appropriate evidence, try to defeat the charge filed against him or her by proving that at the time the offense occurred, the defendant lacked the ability to intend the voluntary and probable consequences of his or her act. *State v. Hood*, 301 Neb. 207, 917 N.W.2d 880 (2018). In this vein, the court has stated "there are a variety of mental conditions which bear upon the ability to form a specific intent." *Id.* at 217, 917 N.W.2d at 889 (citing *State v. Vosler*, 216 Neb. 461, 345 N.W.2d 806 (1984)).

We determine the record is insufficient to adequately review this claim. There is nothing in the record that reflects what specific symptoms Danielson experienced at the time of his crimes, whether those symptoms impacted his ability to form a specific intent, and whether his trial counsel discussed this specific defense with him. Therefore, we conclude that the record is insufficient to address this assignment of error on direct appeal.

### (d) Failure to Pursue Competency Evaluation

Danielson next assigns his trial counsel was ineffective for failing to pursue a competency evaluation to determine whether he was competent to enter a plea or stand trial.

In order to demonstrate prejudice from counsel's failure to investigate competency and for failure to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found the defendant incompetent had a competency hearing been conducted. *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011). A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). The test of mental capacity to plead is the same as that required to stand trial. *Id.* A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the defendant's competence. *Id.*

We determine the record refutes Danielson's claim that his trial counsel was ineffective for failing to challenge his competency to enter a plea and stand trial. At Danielson's plea hearing, after the court explained the nature of his charges and the possible sentences, the court asked him if had consumed any alcohol or narcotics, whether he was employed, how old he was, and inquired about his education level. The court proceeded to find that Danielson was following the questions, giving suitable answers, appeared to be operating normally, and therefore was competent to proceed. The court then asked Danielson's attorney whether he believed that Danielson understood his rights, the consequences of waiving them, and whether he was doing so freely, voluntarily, knowingly, and intelligently. His attorney responded affirmatively to each question. We determine this record demonstrates that Danielson was competent to stand trial and that nothing in the record reasonably indicates a probability that he would have been declared incompetent if he pursued a competency hearing. As such, Danielson is unable to show he was prejudiced by his trial counsel not pursuing a competency evaluation.

(e) Promised Short Term of Incarceration

Danielson next assigns that his trial counsel was ineffective for promising him that if he entered a plea, the court would sentence him to a specific low term of incarceration.

The Supreme Court has held that allegations of ineffective assistance which are affirmatively refuted by a defendant's assurances to the sentencing court do not constitute a basis for postconviction relief. *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). As it has noted:

> If the dialogue which is required between the court and the defendant whereat, as here, the court receives an affirmative answer as to whether the defendant understands the specified and full panoply of constitutional rights . . . and whether it is true that defendant was not improperly influenced by threats or promises . . . all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*Id.* at 118, 835 N.W.2d at 58 (citing *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988).

We determine the record refutes Danielson's claim that his trial counsel was ineffective for promising him a shorter sentence if he accepted the plea agreement. During the sentencing hearing,

the district court repeatedly asked Danielson if he had been promised anything in exchange for waiving his rights. Danielson responded "No" each time. The court then explicitly asked Danielson, "[H]as anyone made any promises to you concerning what my sentence will be in this case if I accept your pleas and find you guilty?" Although Danielson did not initially respond, the court asked again, "Has anyone promised you what I'm going to sentence you to?" Danielson responded, "No."

Because the record refutes Danielson's claim of ineffective assistance, we determine that his claim fails.

### (f) Advised to Answer Questions
### Untruthfully at Plea Hearing

Danielson next assigns his trial counsel was ineffective because he advised him to provide untruthful responses to the court when asked if he was promised a more lenient sentence in exchange for accepting the plea deal. Danielson claims that he was promised a more lenient sentence but was told by his trial counsel to answer differently when the court asked about it.

We determine the record is insufficient to review this claim on direct appeal. The record does not contain any discussions between Danielson and his attorney about Danielson being instructed to respond to questions in a certain way. Absent any information pertaining to this, the record is insufficient to review this assignment of error on direct appeal.

### 2. EXCESSIVE SENTENCE

Danielson also assigns the district court abused its discretion by imposing excessive sentences. Specifically, Danielson claims the court failed to properly account for his deteriorated mental capacity, his efforts to rehabilitate himself, and Berlage's role in the offense. Additionally, he claims the court gave him a disproportionate sentence by not properly weighing the statutory factors.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). However, it is not necessary for a sentencing court to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

Danielson's convictions for attempted kidnapping and first degree sexual assault are both Class II felonies which are punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). The district court sentenced Danielson to 40 to 50 years' imprisonment on the attempted kidnapping conviction and a consecutive 30 to 40 years' imprisonment on the sexual assault conviction. Accordingly, Danielson's sentences were within the appropriate statutory range.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Roth, supra*. A judicial abuse

of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

Based on Danielson's criminal history, risk assessment scores, and the underlying circumstances of his convictions, we determine the district court did not abuse its discretion in sentencing him to a cumulative 70 to 90 years' imprisonment.

In 2009, Danielson was convicted in juvenile court of minor in possession of alcohol and put on probation which was later revoked. From 2010 to 2022, he accumulated 11 traffic citations for various infractions. In 2011, he was convicted of third degree assault and criminal attempt of a Class IV felony for assaulting his then-girlfriend who was pregnant with their child. During this incident, Danielson hit his girlfriend, broke her cellphone into two pieces, ripped her pants, and put her in headlocks that affected her ability to breathe. Then in 2016, he was convicted on two counts of third degree domestic assault related to the further domestic abuse of his girlfriend. The relevant incident involved Danielson swinging her by her ponytail, punching her in the face, and choking her all while she was holding their child in her arms. Also in 2016, Danielson was convicted of driving under the influence, first offense.

On the Level of Service/Case Management inventory, Danielson scored as a general "High Risk" for recidivism. The PSI reported that he scored a "Very High" risk in the "Procriminal Attitude" category, and a "High Risk" in the "Criminal History," "Family/Marital," "Leisure/Recreation," and "Antisocial Pattern" categories. Then on the Vermont Assessment of Sex Offender Risk-2, which assesses the risk of adult males who have been convicted of a qualifying sex offense, Danielson scored in the "Moderate-High" risk range. The PSI stated that his age at community placement, prior sentencing dates, relationship to his victim, and his history of substance abuse factored into his score. Danielson also scored as a "Moderate" risk on the Sex Offender Treatment Intervention and Progress Scale which is designed to assist clinicians in assessing the risk, treatment needs, and progress among adult male sex offenders. Related to this score, Danielson was assessed to be in the "considerable need for improvement range" and was given a static and dynamic risk of "Moderate-High."

In addition to the information contained in the PSI, we note the astonishing circumstances of Danielson's convictions. In an act of vengeance, Danielson lured Berlage to a secluded workshop where he restrained and tortured him for many hours. He made Berlage dangle by his handcuffs from a forklift, welded him to a table, burned multiple parts of his body with a blowtorch, beat him, branded him several times with a home-made branding tool, forced him to take excessive amounts of LSD, put a gun in his mouth, and left him tied to a tree for others to find. In addition to these acts of incredible violence, he took advantage of the situation to sexually assault K.D.

Given Danielson's criminal history, risk of recidivism, and atrocious crimes, we conclude that the district court did not abuse its discretion in sentencing him to a cumulative 70 to 90 years' imprisonment.

## VI. CONCLUSION

We determine the record refutes Danielson's claims that his trial counsel was ineffective for not advising him to pursue a motion to suppress, for not filing a motion to suppress, for not challenging his competency to enter a plea or stand trial, and for allegedly promising him a shorter

sentence if he accepted the plea agreement. We also determine the record is insufficient to properly review Danielson's claims that his trial counsel was ineffective for not pursuing an insanity defense, for not pursuing a temporary diminished mental capacity defense, and for allegedly instructing him to give untruthful answers to the court at his plea hearing. Lastly, we conclude the district court did not abuse its discretion in sentencing Danielson to a cumulative period of 70 to 90 years' incarceration.

AFFIRMED.