IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ROBERTS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NICK A. ROBERTS, APPELLANT.

Filed November 12, 2024.    No. A-24-396.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Christopher Eickholt, of Eickholt Law, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

PIRTLE, ARTERBURN, and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

Nick A. Roberts appeals the sentence imposed by the district court for Lancaster County. He also assigns that he received ineffective assistance from his trial counsel. For the reasons that follow, we affirm.

## BACKGROUND

On August 28, 2023, the Lancaster County Metro Fugitive Task Force was searching for Roberts, aged 49, because he absconded from his parole. He was also a suspect for a reported vehicle theft. After the task force located Roberts and attempted to arrest him, he fled in the stolen vehicle. During his flight, his vehicle struck one of the officers' vehicles. Shortly after, law enforcement found the stolen vehicle abandoned and received a report of a stolen golf cart in the area. Law enforcement eventually found Roberts driving the golf cart and apprehended him.

- 1 -

On November 15, 2023, Roberts was charged with five felonies: two counts of theft by unlawful taking, operation of a motor vehicle to avoid arrest, resisting arrest using a deadly or dangerous weapon, and driving during revocation. The State also alleged that Roberts was a habitual criminal. A plea agreement was ultimately reached, and on March 18, 2024, Roberts pled guilty to resisting arrest using a deadly or dangerous weapon, a Class IIIA felony. However, this charge still carried the habitual criminal allegation. In exchange for his plea, the State dismissed the remaining four counts.

At the plea hearing, the district court accepted Roberts' guilty plea after determining that he was acting voluntarily, understood the nature of the charge, and fully understood the rights he was waiving. Further, Roberts indicated that he discussed the plea agreement with his attorney, spoke with her about all the possible defenses, and told her everything she needed to know to properly represent him. However, when he was asked if he was satisfied with his attorney's performance the following colloquy occurred:

[Roberts]: I mean, to be honest with you, not really, but you know, it is what it is. I don't think I can actually get another attorney, but I really feel like I wasn't really properly, you know, defended on the case in any way or -

The Court: [generally explaining that he was not entitled to a new public defender, but he could take the matter to trial if he was not satisfied with his attorney's performance in negotiating the plea agreement].

[Roberts]: I mean, I would like to just proceed what [sic] I'm doing here. I mean, it's not that she hasn't done a good job, but just I feel like that, you know, I wasn't really -- everything wasn't said in the case that was -- but I'll explain that to you at [the sentencing] hearing, Your Honor. That's really all I –

THE COURT: And I understand there's a plea agreement in this and that you're – you're taking the plea agreement. That probably has something to do with it. And we'll – we'll get to those questions here in a moment, okay?

[Roberts]: Okay.

THE COURT: Let me ask you this. Do you think your attorney's competent?

[Roberts]: Yes.

THE COURT: Okay. Have you had enough time to talk to your attorney?

[Roberts]: I have.

. . .

THE COURT: All right. Mr. Roberts, is [the plea agreement] an agreeable way to resolve this matter, as far as you are concerned?

[Roberts]: Yes, it is –

On April 23, 2024, the court held Roberts' enhancement and sentencing hearing. The State offered evidence that Robert was previously convicted of 13 felonies. The court determined that Roberts was a habitual criminal and would be sentenced accordingly.

The court then allowed Roberts' attorney, Roberts, and the State opportunities to address the court. Roberts' attorney generally stated that he took responsibility for his actions and explained his history of substance abuse. She discussed how he fell into a downward spiral once he was placed on probation because he did not have the proper support to address his addictions.

She also explained that when Roberts initially fled from the fugitive task force, he did not know they were law enforcement because they were in unmarked vehicles and wearing plain clothes. Additionally, she mentioned how he stole the vehicle from a dealership instead of an individual because he knew it would be insured and did not want to deprive someone of their transportation. Lastly, she stated that Roberts wished he could pay restitution, was taking proper medication, and was engaging with the services provided to him in jail. With this, she requested the minimum term of imprisonment be imposed and for that sentence to run concurrently with the sentence he was already serving.

Roberts then addressed the court and stated, his attorney "kind of summed it up." But he apologized for his actions, took full responsibility, and stated that he was willing to pay restitution. The State then addressed the court and pointed out that Roberts committed this crime while already out on parole. The State then said that Roberts was neither a young nor old man but fit the definition of a habitual criminal.

Before the court sentenced Roberts, it stated:

> Well, Mr. Roberts, yeah, unfortunately, you find yourself in this situation, you know, prior felony convictions, and with this one, that's during the time that you were absconded on parole, you committed five felonies. Four of those were dismissed as part of the plea agreement. You pled to the one I'm sentencing you on today.

> You know, it -- I note that in the Saunders County conviction, 2015, they dismissed the habitual criminal for your plea there, so, you know, it shouldn't have come as a big surprise that if you were going to go out and commit more felonies, that you were going to be charged as a habitual criminal.

> You know, I -- I hope that you can find a way to overcome your addiction, Mr. Roberts. You know, it -- addictions lead to criminal activity for sure. So I – I hope that you can get that figured out.

> So, having made the previous findings and having regard for the nature and circumstance of the crimes, the history, character, and condition of [Roberts], the Court finds that imprisonment of [Roberts] is necessary for the protection of the public, because the risk is substantial that during any period of probation he would engage in additional criminal conduct, and a lesser sentence would depreciate the seriousness of his crimes and promote disrespect for the law.

The court then sentenced Roberts to 15 to 20 years' imprisonment and ordered his sentence to run consecutively to any other sentence previously imposed.

Roberts now appeals. His attorney on appeal is different than his trial counsel.

## ASSIGNMENTS OF ERROR

Restated and reordered, Roberts assigns that the district court abused its discretion in imposing an excessive sentence. He also assigns that he received ineffective assistance of counsel because his trial counsel (1) did not meaningfully or sufficiently communicate with him; (2) failed to advocate for or negotiate a more favorable plea agreement; and (3) failed to effectively argue for a lesser sentence than what was imposed.

STANDARD OF REVIEW

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *Id.* In reviewing a claim of ineffective assistance of trial counsel on direct appeal, an appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

ANALYSIS

*Excessive Sentence.*

Roberts assigns the district court abused its discretion by imposing an excessive sentence. He generally argues that the court did not articulate how it weighed the relevant sentencing factors and ultimately failed to weigh them properly. More specifically, he asserts the court failed to meaningfully consider mitigating factors such as the circumstances surrounding the offense, the nature of the offense and his age, mentality, and history.

Roberts was convicted of a Class IIIA felony, which is normally punishable by a maximum term of 3 years' imprisonment and 18 months' post-release supervision, a fine of $10,000, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). However, in this case, Roberts was found to be a habitual criminal. As a result, pursuant to Neb. Rev. Stat. § 29-2221 (Supp. 2023) his felony conviction was subject to a mandatory minimum term of 10 years' imprisonment and a maximum term of 60 years' imprisonment. Given the sentencing scheme of the habitual criminal statute, Roberts' sentence is clearly within statutory limits.

Because Roberts' sentence is within statutory limits, we review the district court's sentence for an abuse of discretion. *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021). In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the relevant factors and any applicable legal principles in determining the sentence to be imposed. *Id.* Relevant factors in that analysis may include the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment that includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024).

First, to the extent that Roberts' assignment of error takes issue with how the court articulated and weighed the relevant sentencing factors, we determine the court did not abuse its discretion. It is not necessary for a sentencing court to articulate on the record that it has considered

each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). Additionally, it is not the function of an appellate court to conduct a de novo review and a reweighing of the sentencing factors in the record. *State v. Starks, supra*.

Nothing in the record suggests the district court failed to account for mitigating factors. The record indicates that the court considered Roberts' age, history of substance abuse, criminal history, status as a habitual criminal, and the circumstances of his crime. Because the record demonstrates the court considered the relevant sentencing factors in making its sentencing determination and it was not required to make specific findings for each factor, we determine the court did not abuse its discretion.

Additionally, to the extent Roberts' assignment of error takes issue with the length of his sentence, we determine the court did not abuse its discretion. This was Roberts' 14th felony conviction. In 1993, he was convicted of theft by receiving stolen property, a Class IV felony. He was sentenced to a term of probation, which was later revoked. In 2005, he was convicted of possession of a controlled substance, a Class IV felony; theft by deception, a Class III felony; and theft by deception, a Class I misdemeanor. In 2006, he was convicted of aiding and abetting a second degree assault, a Class IIIA felony.

In 2010, he was convicted of driving during revocation, a Class IV felony, and DUI first offense, a Class W misdemeanor. In 2011, he was convicted of theft by unlawful taking more than $500 but less than $1,500, a Class IV felony. In 2021, he was convicted of escape while under arrest on a felony charge, a Class III felony. In 2015, he was convicted of burglary, a Class III felony; DUI third offense, a Class IIIA felony; driving during revocation, a Class IV felony; and criminal impersonation, a Class IV felony. In 2017, he was convicted of criminal impersonation, a Class IV felony.

In 2021, he was convicted of driving during revocation, first offense, a Class IV felony; terroristic threats, a Class IIIA felony; and theft by receiving $5,000 or more, a Class IIA felony. Also in 2021, he was convicted of resisting arrest, second offense, a Class IIIA felony, and false reporting, a Class I misdemeanor. For these convictions, he was sentenced to 30 months' imprisonment and 1 year post-release supervision, which he later absconded from. Based on Roberts' lengthy criminal history and apparent inability to not commit crimes, we determine the court did not abuse its discretion in sentencing him to 15 to 20 years' imprisonment to run consecutive to any previously imposed sentences.

*Ineffective Assistance of Counsel.*

Roberts' next three assignments of error allege he received ineffective assistance of counsel. For each claim, he contends the record is insufficient to conclusively determine whether his counsel provided ineffective assistance and whether he was prejudiced by the alleged deficient performance. We disagree.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Betts*, 31 Neb. App. 737, 989 N.W.2d 441 (2023). The fact that an ineffective assistance of counsel claim is raised on direct appeal does

not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). On direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.* To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice from counsel's deficient performance, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

Roberts' assignments of error assert his trial counsel (1) did not meaningfully or sufficiently communicate with him; (2) failed to advocate for or negotiate a more favorable plea agreement; and (3) failed to effectively argue for a lesser sentence than what was imposed. We determine the record refutes his first two claims, but do not address his third claim because it is not sufficiently specific.

The Nebraska Supreme Court has held that when allegations of ineffective assistance are affirmatively refuted by a defendant's assurances to the sentencing court, there is no basis for relief. See *State v. Vanderpool*, 286 Neb. 111, 835 N.W.2d 52 (2013). In making this decision, the court cited to a prior opinion where it stated,

> If the dialogue which is required between the court and the defendant . . . all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*Id.* at 118-19, 835 N.W.2d at 58 (citing *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988)).

First, the record refutes Roberts' assignment that his attorney was ineffective for failing to sufficiently communicate with him. At his plea hearing, Roberts indicated that he had discussed all the possible defenses with his attorney, informed her about everything she needed to know to properly represent him, and had enough time to talk to her. While he also stated that he disagreed with some aspects of the factual basis and was not satisfied with his attorney's performance, he expressed that he adequately discussed the case with her. In this regard, the record clearly refutes this assignment of error.

Next, the record refutes Roberts' assignment that his attorney was ineffective for failing to secure him a more favorable plea agreement. This assignment fails because Roberts' suggestion that a more favorable plea agreement would have been offered and accepted by the State is pure speculation. Such speculation cannot support a finding of prejudice. See *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172 (2010).

Moreover, the record from the plea hearing refutes Roberts' contention that he was not satisfied with the plea agreement negotiated by his trial counsel. At the hearing, Roberts averred that the plea agreement was "an agreeable way to resolve the matter." He also acknowledged that he understood the plea agreement, believed his trial counsel was competent, and had enough time

to discuss it with her. Given Roberts' statements during the plea hearing, he cannot now assert that he should have gotten a better plea agreement than what was negotiated by his trial counsel. In other words, Roberts cannot freely and voluntarily enter into a plea agreement, gamble on a favorable result, and then complain about the outcome. Cf. *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008).

Lastly, we determine Roberts' assignment that his trial counsel was ineffective for failing to effectively argue for a lesser sentence lacks the required specificity to be addressed. We restrict our analysis to only those errors that are assigned and specifically alleged. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Id.* Roberts asserts that the State made "a number of arguments at sentencing" that his trial counsel failed to respond to. Brief for appellant at 11. He does not specify what arguments he is referencing or how his trial counsel should have responded to change the outcome. Without this information, we determine this assignment lacks the required specificity for this court to address it. *State v. Anders, supra.* Therefore, we do not address this assignment of error.

## CONCLUSION

We determine the district court did not abuse its discretion in sentencing Roberts to 15 to 20 years' imprisonment. We also determine his first two assignments of error asserting ineffective assistance of counsel are refuted by the record and do not address his third assignment alleging ineffective assistance of counsel because it lacks the required specificity.

AFFIRMED.