IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. ROLLIE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CURTIS H. ROLLIE, APPELLANT.

Filed August 6, 2024.    No. A-23-717.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Matthew K. Kosmicki, for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Curtis H. Rollie appeals his plea-based convictions of possession of a firearm by a prohibited person and terroristic threats. He contends that the sentences imposed are excessive and that his trial counsel was ineffective in various ways. After reviewing these assigned errors, we affirm Rollie's convictions and sentences.

## II. STATEMENT OF FACTS

### 1. BACKGROUND

In July 2021, Rollie entered the home of his ex-girlfriend, the victim, and used a firearm to prevent her from leaving her basement for several hours. Rollie also punched the victim's right ear, causing injury, and threatened to harm the victim's son and mother who were both present at the home. The victim was eventually able to contact law enforcement and Rollie was arrested at the victim's home. As a result of this incident, Rollie was eventually charged with use of a firearm

to commit a felony, a Class IC felony; possession of a firearm by a prohibited person, a Class ID felony; terroristic threats, a Class IIIA felony; first degree false imprisonment, a Class IIIA felony; and first offense resisting arrest, a Class I misdemeanor.

## 2. Plea Offers and Plea Hearing

Rollie declined to accept several plea offers after which the State filed a motion to file an amended information to add habitual criminal allegations. During the May 2023 hearing to address the State's request to amend the information to add habitual criminal allegations, the State made a record of the plea negotiations that had occurred in Rollie's case and described a global plea offer involving four separate cases that included the State's agreement not to pursue habitual criminal enhancement charges. The State noted that the plea offers had been rejected by Rollie and that Rollie had been informed that if he chose not to accept the plea offer, the State would proceed with its request to add habitual criminal allegations to the charged offenses.

Although Rollie indicated at the start of the hearing that he did not want to accept the State's plea offer, during the course of the hearing he changed his mind. Due to the unusual turn of events that occurred during the course of the hearing, we quote extensively from the record. Upon Rollie's acknowledgement that he understood the plea agreement that had been offered, defense counsel requested to speak with Rollie off the record. After returning from the short off-the-record conversation between Rollie and his counsel, the following colloquy occurred between the court, Rollie, and defense counsel:

[Defense Counsel]: I know you probably want to continue your discussion with [Rollie], but [Rollie has] informed me that he does [sic] want to take the plea.

THE COURT: He does want to take ---

[Defense Counsel]: Does not.

THE COURT: Does not want to take the plea. Okay. I don't think I need any further discussion with you Mr. Rollie. As long as you tell me you understand. Do you understand the offer and you understand the consequences of turning it down? Do you sir?

MR. ROLLIE: Your Honor, [I would like] for the record to show [that] something [is] telling me not to take [the plea] but I don't know I'll just go ahead.

THE COURT: You just don't what?

MR. ROLLIE: Something telling me don't take it but I'll go ahead and take it.

THE COURT: Do you want to take it?

MR. ROLLIE: Yeah, I'll take the plea Your Honor.

THE COURT: Okay. . . . can we proceed with the plea offer?

[The State]: Yes, . . . the plea offer still stands until the amended informations were filed. Or were accepted and so he still has an opportunity to accept the plea offer if he'd like to do that today.

THE COURT: Should we do that right now?

MR. ROLLIE: Do what?

THE COURT: Do you want to proceed with the plea hearing now sir?

MR. ROLLIE: Yes ma'am I do.

. . . .

[The State]: Mr. Rollie will be entering a plea to Count II and Count III of that information.

THE COURT: Alright. Mr. Rollie, you previously [pled] not guilty to Counts II and III of the amended information. Would you like to withdraw that not guilty plea and enter a different plea here today?

MR. ROLLIE: No, Your Honor I'd like to enter a no contest [plea].

THE COURT: Alright.

. . . .

MR. ROLLIE: Your Honor?

THE COURT: Yes sir.

MR. ROLLIE: I'd like to do a French plea.

THE COURT: Go ahead Mr. Rollie, [defense counsel].

[Defense Counsel]: Judge he's indicating that . . . and I think it's fairly clear to the Court that, . . . he does not believe that he is guilty of these charges. That's why he's going to enter a no contest plea . . . but he wants the Court to know that he understands that if this matter were to go to trial on all of these cases that it's likely that he would be convicted of these . . .

. . . .

(Mr. Rollie is speaking to [his] attorney[.])

MR. ROLLIE: I could be convicted of one and . . . that's all it'll take so that's why I'm pleading. Or . . . [taking] the plea.

[Defense Counsel:] As I said Judge, you know, he . . . believes . . . that he would face conviction on one or more of these counts and so he wants the Court to be aware of that . . . and he wants to enter his plea on that basis.

. . . .

[THE COURT]: . . . Do you wish to withdraw your previously entered not guilty pleas and enter different pleas here today sir?

[MR. ROLLIE]: Yes, Your Honor. Yes, Your Honor.

The global plea agreement referred to by the State involved Rollie pleading to possession of a firearm by a prohibited person, a Class ID felony, and terroristic threats, a Class IIIA felony, with the State then dismissing the remaining charges in the instant case and agreeing not to pursue habitual criminal enhancement. Additionally, the State agreed to dismiss three other cases in which Rollie had been charged with a total of one count of assault by a confined person, a Class IIIA felony, and two counts of possession of a controlled substance, both Class IV felonies.

During the plea hearing, the court explained the waiver of rights to Rollie, including advising Rollie of his right to a separate hearing regarding any statements he made to law enforcement and that entering pleas of no contest would result in the waiver of that right. Part of that explanation included the following colloquy:

THE COURT: If you made statements to law enforcement, you're entitled to a separate hearing to have me determine whether those statements were made freely, voluntarily, knowingly, and intelligently. If I were to find any one of those things missing,

- 3 -

then those statements by you could not be used against you at trial. If I accept your plea you are waiving your right to that type of hearing ---

MR. ROLLIE: Your Honor?

THE COURT: --- do you understand? Yes sir?

MR. ROLLIE: I want to ---

THE COURT: Do you want to talk to your counsel?

MR. ROLLIE: Yeah, I want to talk to my counsel, Your Honor.

At this point in the hearing, the Court recessed to allow Rollie and his counsel to consult. When the hearing resumed, the colloquy continued:

THE COURT: So we ---

[Defense Counsel]: Your Honor, we've had a conversation with our client.

MR. ROLLIE: Sorry about that Your Honor.

THE COURT: That's okay.

MR. ROLLIE: And we're ready to proceed with the plea.

THE COURT: Alright. You don't need to apologize for taking time and asking questions okay?

MR. ROLLIE: Yes ma'am.

THE COURT: Alright. So I'm just going to repeat that just to make sure that we're on the same page and we're talking about the same thing. If you made any statements to law enforcement you're entitled to a separate hearing to have me determine whether those statements were made freely, voluntarily, knowingly, and intelligently. If I were to find any one of those things missing, then those statements by you could not be used against you at trial. Do you understand that right sir?

MR. ROLLIE: Yes, Your Honor.

THE COURT: And do you wish to waive your right to that separate hearing?

MR. ROLLIE: Yes, Your Honor.

THE COURT: And if law enforcement took any evidence from you, you're entitled to a separate hearing to have me determine whether it was lawfully taken from you. If I were to find the evidence was not lawfully taken from you, then that evidence could not be used against you at trial. If I accept your plea you are waiving your right to that type of separate hearing. Do you understand?

MR. ROLLIE: Yes, Your Honor.

THE COURT: In explaining these rights did I use any word or phrase you did not understand?

MR. ROLLIE: No, Your Honor. No, Your Honor.

THE COURT: Do you wish to waive these rights?

MR. ROLLIE: Yes, Your Honor.

THE COURT: And are you doing that freely and voluntarily?

MR. ROLLIE: Not really. I'm not. I'm not. I want the record to show I'm not.

THE COURT: Then we can't proceed with the plea [because] I'm not going to accept your plea if you tell me you're not freely and voluntarily waiving these rights.

MR. ROLLIE: Your Honor it's being honest. I want to take the plea. I'm taking the plea but I'm not doing it freely and voluntarily Your Honor. . . . I'm just being honest, Your Honor.

THE COURT: And . . . I appreciate that. When you say you're not doing it freely and voluntarily, is that because somebody is making you take the plea?

MR. ROLLIE: Basically Your Honor.

THE COURT: How so?

MR. ROLLIE: This – this right here, Your Honor.

THE COURT: Is it because the State is saying it will amend and ---

MR. ROLLIE: Yes, Your Honor.

THE COURT: --- the habitual criminal?

MR. ROLLIE: Yes, Your Honor. That's the reason there.

THE COURT: Alright. So . . . with the State's position being that if you don't enter a plea, they're going to add the habitual criminal to the informations, is that what makes you feel like you're not doing this freely and voluntarily?

MR. ROLLIE: Yes, Your Honor.

THE COURT: Is anything else making you feel like you are not doing this freely and voluntarily?

MR. ROLLIE: I don't feel like I get a good shake, Your Honor. That's all. That's it.

THE COURT: And . . . you don't get a good shake because you have that habitual criminal ---

MR. ROLLIE: Yes, Your Honor.

THE COURT: --- hanging over your head?

MR. ROLLIE: Yes, Your Honor.

THE COURT: Okay. Is anything else making you feel like you don't have a choice?

MR. ROLLIE: No, Your Honor.

THE COURT: And – so I understand what you are saying and . . . I want to make sure that this is the decision you make and it's fully informed and you understand everything we're doing. Can you say that you understand everything?

MR. ROLLIE: Yes, Your Honor I do.

THE COURT: Alright.

Although the State indicated that it would refer to defense counsel's position on Rollie's voluntariness, the State explained that

I believe from Mr. Rollie's comments I understand that he is saying he's . . . entering the pleas because there's a plea offer that's been made available to him and that's what's inducing him. I think the Court can accept the plea with that understanding that there's been no other coercion placed upon him other than the plea agreement. But . . . I guess I'd want [defense] counsel to also acknowledge that, that's their understanding.

In response, defense counsel explained:

[Rollie] does understand what he's doing and he does want to take the plea bargain. He . . . challenges the fairness of being, in his words, bullied by having to take . . . the plea bargain to avoid the Habitual Criminal Enhancements. He doesn't think that's fair. And correct me if I'm wrong, he doesn't believe that's fair and he believes . . .

. . . .

. . . . it doesn't give him an opportunity to have a fair trial, but understanding that to avoid . . . the Habitual Criminal Enhancements and to avoid the possibility of being convicted on . . . all of the charges or even one or two of the charges under the habitual criminal act . . . or amendment, he is willingly taking the plea and entering a plea. So in that sense, it is voluntary and he's not being coerced to . . . actually take the plea, [he just] . . . has a sense that this is not fairness or justice for him because he's being forced to do this to avoid a worse outcome. . . .

In response to the court's inquiry of whether Rollie agreed with defense counsel's statements, Rollie responded "Yes, Your Honor."

Later during the plea hearing, the court inquired of Rollie regarding defense counsel:

THE COURT: Sir have you discussed these charges and the possible defenses with your counsel?

MR. ROLLIE: Yes, Your Honor.

THE COURT: Has he explained to you what the State of Nebraska would need to prove beyond a reasonable doubt in order to convict you of possession of a firearm by a prohibited person and terroristic threats?

MR. ROLLIE: Yes, Your Honor.

THE COURT: Have you told him everything there is to know about that situation?

MR. ROLLIE: About the situation?

THE COURT: About these particular charges. Have you told him everything there is to know about what happened that day when you [were] charged and arrested?

MR. ROLLIE: Your Honor, . . . I told him I'd take a plea one day and . . . then . . . it went fast. All of a sudden . . . I was here 23 months and I told him I wanted to plea[d]. After that . . . it superseded [sic] to today.

THE COURT: Okay.

MR. ROLLIE[:] So I didn't really have time to really sit back and even talk to him about . . . everything that happened.

THE COURT: Do you need any more time to talk to him about it?

MR. ROLLIE: Your Honor, I'm just ready to get it over with Your Honor.

THE COURT: Is there anything that could help you that you haven't told him for whatever reason? With respect to these two charges sir?

MR. ROLLIE: It's the habitual . . . I'm not getting no fair . . .

THE COURT: And I understand you think it's unfair because of that habitual criminal piece, but . . . aside from that ---

MR. ROLLIE: My thing is . . . why they coming at the end. Why they coming . . . 23 months later? That's my thought.

THE COURT: And I understand that. I'm going to ask you to set that aside for just a moment. Is there anything that . . . could help your case? That would help your defense to either one of these charges that you haven't told [your defense counsel] about?

MR. ROLLIE: No, Your Honor.

THE COURT: Are you satisfied with the job he has done?

MR. ROLLIE: To be honest I can't say I'm satisfied with him, Your Honor.

THE COURT: Okay.

MR. ROLLIE: I'm not going to sit up here and lie to you.

THE COURT: Nope tell me what you are not satisfied with.

MR. ROLLIE: I just – it's just something in my gut and my heart that's telling me I'm not satisfied with it.

THE COURT: Okay. Is there anything you can point to specifically to say he didn't do this or he should have done this, or I asked him to do this?

MR. ROLLIE: I feel he should've . . . went over my case with me a little bit more to give me . . . more of a stand point of where . . . we're coming from instead of just – I tell him to read this and read that . . . he ain't read it and then go back and say he read it and it's – Your Honor, it's just – the transcripts to the deposition, you know, it's a lot of things Your Honor that I'm sitting up here now I'm thinking I'm like I wasn't satisfied with it.

THE COURT: So [defense counsel] can you speak to that? Have you read . . . the items that you've told him you've read?

[Defense Counsel]: Yes, Judge.

THE COURT: Okay.

[Defense Counsel]: . . . frankly I can't tell you how many conversations we've had mainly by video at the . . . jail with video conferencing. . . . and then [Rollie] has called me a number of times on his own and we've discussed various aspects of the cases and in particular, probably the most serious case which is [case number] 1168, in terms of weapons charges and the video involved and some of the possible . . . defenses we have for that. . . . So I'm not sure what it is that [Rollie] is concerned about. I can't think of what it would be that . . . we haven't discussed. But . . . I'm certain he thinks that this . . . whole proceeding is not fair.

THE COURT: Right. . . . Mr. Rollie, I want to make sure you understand. I know you're not happy with the result. Okay. I know you're not happy with it and you don't think it's fair. But aside from the result which you do not like, is there any reason you are not satisfied with the services [that defense counsel] provided you?

MR. ROLLIE: Your Honor, I'm being honest I'm not.

THE COURT: . . . and again I'm going to ask you just to specify what he did wrong in your opinion?

MR. ROLLIE: It's what he didn't do really. . . .

THE COURT: So is there anything you asked [defense counsel] to do that he failed or refused to do?

MR. ROLLIE: Really it was times when I felt like – Your Honor it's kind of hard to put into words, you know, there [were] so many things. . . . it's a lot of things, Your Honor, I don't feel he did.

THE COURT: Well was there anything you asked him to do that he failed or refused to do? Let's start there.

MR. ROLLIE: No, we didn't get to that point.

THE COURT: I'm sorry.

MR. ROLLIE: I asked him to do a couple things, but we didn't even get to that point due to this.

THE COURT: So what did ---

MR. ROLLIE: So . . . I'm sorry but I can't say that he did anything. I mean I can't say that he did anything I didn't tell him to do. That I asked him to do.

THE COURT: Okay. . . . so he did the things that you asked him to do?

MR. ROLLIE: We didn't get to that point, Your Honor.

THE COURT: Okay.

MR. ROLLIE: Due to this?

THE COURT: Okay. . . so there's nothing that you asked him to do that he failed or refused to do?

MR. ROLLIE: Yes, Your Honor.

THE COURT: That is a correct statement; correct?

MR. ROLLIE: Yeah, yes, Your Honor.

THE COURT: Alright. And so you're telling me that you don't think that he . . . read everything? Is –

MR. ROLLIE: He didn't – that's what I feel.

THE COURT: Okay. Anything else that you feel he did not do that makes you unsatisfied?

MR. ROLLIE: No I can't – I can't even think right now. . . .

THE COURT: Okay. Do you want to take some time to think about that then? Cause I want to know if there's something he did wrong and that you're claiming he did wrong. I think we need to talk about that and get to the bottom of it.

MR. ROLLIE: There was a whole thing – Your Honor . . . I don't got nothing to say.

THE COURT: Okay.

MR. ROLLIE: Sorry, I ain't got nothing to say.

After this discussion, the State again summarized the plea agreement, and the court and Rollie continued their dialogue:

THE COURT: . . . Mr. Rollie, is that your understanding of this plea agreement?

MR. ROLLIE: Yes . . . Your Honor.

THE COURT: Have any promises or representations been made to you about this plea agreement other than what you just heard summarized here?

MR. ROLLIE: No, Your Honor.

THE COURT: Have any promises or representations been made to you about what my sentence will be if I accept your plea?

MR. ROLLIE: No, Your Honor.

THE COURT: Given everything we've gone over today Mr. Rollie, do you still wish to proceed with the plea at this time?

MR. ROLLIE: Yes, Your Honor.

The State then provided a factual basis which set forth that on July 3, 2021, the victim reported that she was at home when Rollie, with whom she previously had a relationship, entered her residence through an open door, yelled at her, pointed a handgun directly at her face, and refused to let her leave. During the incident, Rollie struck her in the face. During a protective sweep of the victim's residence, officers located two handguns. One of the handguns contained Rollie's DNA and the other handgun contained Rollie's fingerprints. The State further set forth that Rollie had previously been convicted of the felonies of second degree assault and burglary, which were valid convictions for the firearm prohibition because Rollie had been represented by counsel during all critical stages of those proceedings.

Following the extensive discussions that occurred during the plea hearing, the court determined that Rollie understood his rights and the consequences of waiving those rights and that Rollie was "waiving his rights freely, voluntarily, knowingly, and intelligently, but he is waiving those rights because of the plea offer that has been made and his desire to avoid the habitual criminal charge." The court accepted Rollie's pleas of no contest to possession of a firearm by a prohibited person, a Class ID felony; and terroristic threats, a Class IIIA felony.

### 3. SENTENCING

During the sentencing hearing, the district court stated that it had considered the information contained in the presentence investigation report (PSR) and all of the factors that it was required by law to consider. The court noted that Rollie received the benefit of a favorable plea agreement in which five felony charges and one misdemeanor were dismissed "regardless of the habitual criminal piece." The court noted Rollie's "lengthy criminal history" which included

At least eight prior assault related convictions. There's a 2006 terroristic threats charge which was amended then to intimidate, harass, or offend. You have four prior false statement convictions and at least three prior felony convictions. So the history that I look at indicates that you don't have a high regard for the law and that you do victimize other people . . . . [and] you continue to victimize people. . . . Having regard for all of the information, the nature and circumstances of the crime and the history, character, and condition of the defendant, imprisonment is obviously necessary for the protection of the public. Any lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law.

The district court sentenced Rollie to 15 to 25 years' imprisonment for possession of a firearm by a prohibited person and 3 to 3 years' imprisonment for terroristic threats. The sentences were ordered to run consecutively to each other and any other sentence that Rollie was currently serving. Additionally, Rollie was given credit for 764 days served. Rollie has timely appealed to this court and is represented by different counsel than represented him during his plea and sentencing.

## III. ASSIGNMENTS OF ERROR

Rollie contends that: (1) the sentences imposed are excessive; and (2) his trial counsel was ineffective (a) in failing to move to suppress Rollie's statements to law enforcement; (b) by not investigating, contacting, or deposing Gordon after being requested to do so and not deposing several Lincoln Police Department officers to investigate inconsistencies in the victim's testimony; and (c) in advising Rollie at the May 17, 2023, hearing that it was too late to decline the plea offer and file a motion to suppress and have a jury trial.

## IV. STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirements. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022); *State v. Betts*, 31 Neb. App. 737, 989 N.W.2d 441 (2023). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *State v. Warner, supra*; *State v. Betts, supra*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

Rollie contends that the district court abused its discretion in imposing an excessive sentence. He contends that the district court "failed to adequately consider [Rollie's] rehabilitative needs, his age, his health, his general life circumstances, and his willingness to enter a no contest plea." Brief for appellant at 27. He further "admitted to significant substance use, had been involved in the sales of controlled substances, and was under the influence during this offense," which "demonstrates a need for intervention with treatment, not incarceration." Brief for appellant at 28.

Here, Rollie was convicted of possession of a firearm by a prohibited person, a Class ID felony, and terroristic threats, a Class IIIA felony. Rollie's sentence of 15 to 25 years' imprisonment for the possession conviction is within the statutory sentencing range for Class ID felonies which are punishable by a mandatory minimum of 3 years' imprisonment and a maximum of 50 years' imprisonment. See, Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022) (possession of a deadly weapon by a prohibited person; penalty); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022) (felonies; classification of penalties). Rollie's sentence of 3 years' to 3 years' imprisonment for terroristic threats is within the statutory sentencing range for Class IIIA felonies which are punishable by a minimum of no imprisonment and a maximum of 3 years' imprisonment followed by 9 to 18 months of post-release supervision. See, § 28-105; Neb. Rev. Stat. § 28-311.01 (Reissue 2016) (terroristic threats; penalty). And because Rollie was sentenced to a Class ID felony imposed consecutively to the sentence for the Class IIIA felony, the district court properly sentenced Rollie

to an indeterminate sentence which did not include a period of post-release supervision. See, § 28-105(6); Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016).

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Miller*, 315 Neb. 951, 2 N.W.3d 345 (2024). The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Regarding Rollie's claim that the district court failed to adequately consider all the facts and circumstances surrounding his life in determining his sentence, the district court stated that it had reviewed the presentence investigation report, which included information concerning all of the factors to be considered by a sentencing court. See *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021). We further note that a sentencing court is not required to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. See *id.*

We note that the PSR in this case reflected that Rollie was 44 years old, a high school graduate, divorced, and has four dependents. As a juvenile, Rollie was placed on juvenile probation for assault by strangulation or suffocation; that probation was revoked, and he was placed at the Youth Rehabilitation and Treatment Center. As an adult, Rollie has amassed a substantial criminal history including six convictions for driving under suspension; five convictions for failure to appear; four convictions for making a false statement to a police officer; three convictions each for open alcohol container, assault, third degree assault, possession of marijuana, and attempted possession of a controlled substance; two convictions for disturbing the peace; and single convictions for third degree domestic assault, second degree assault, carrying a concealed weapon, resisting arrest, disorderly conduct, attempted burglary, unauthorized use of a propelled vehicle, possession of a controlled substance, hinder/delay/interrupt arrest, attempted escape, false reporting, intimidation/harassment/offend by phone call, flight in a motor vehicle to avoid arrest, criminal mischief over $100, inmate of a disorderly house, failure to disperse, and other traffic offenses.

The probation officer noted in the PSR that Rollie's "criminal history reflects a poor or indifferent attitude towards laws and authority figures. His ongoing involvement in criminal activities, despite the consequences, reflects a general disregard for the law and an attitude that is supportive of crime. He has a history of assaultive offenses." The probation officer further noted that Rollie showed a "lack of remorse for his actions and no empathy for the victim." Rollie reported a history of alcohol and drug use including marijuana, cocaine, methamphetamine, LSD, mushrooms, ecstasy, K2, opiates, and PCP. He further admitted to being under the influence of

methamphetamine at the time of the current offense. The level of service/case management inventory assessed Rollie as a high risk to reoffend.

We also note that Rollie received a substantial benefit from his global plea agreement. In the current case, Rollie's plea agreement resulted in the State dismissing three offenses: use of a firearm to commit a felony, a Class IC felony; first degree false imprisonment, a Class IIIA felony; and first offense resisting arrest, a Class I misdemeanor. Further, the State agreed not to add habitual criminal allegations, and to dismiss the following charges in three other cases—two counts of possession of methamphetamine, both Class IV felonies, and one count of assault by a confined person, a Class IIIA felony. Even excluding the extraordinary benefit that Rollie received through the State's agreement not to file habitual criminal enhancements, the charges dismissed by the State contained possible aggregate sentences of a mandatory minimum of 5 years' imprisonment to 56 years' imprisonment.

In sum, based upon factors including that the sentences imposed were within the applicable statutory sentencing ranges; the substantial benefit that Rollie received from the global plea agreement; Rollie's criminal history, which exhibited a lack of respect for authority and increasing violent tendencies; Rollie's high risk to reoffend; the serious nature of his convictions and the physical, mental, and emotional injuries sustained by the victim; Rollie's failure to take responsibility for his commission of the offenses and his lack of empathy for the victim, the sentences imposed by the court are not an abuse of discretion. This assignment of error fails.

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Rollie's second assignment of error is that his trial counsel was ineffective in (a) failing to move to suppress Rollie's statements to law enforcement; (b) not investigating, contacting, or deposing witness Billy Gordon after being requested to do so and not deposing several Lincoln Police Department officers to investigate for trial the inconsistencies in the victim's testimony; and (c) advising Rollie at the May 17, 2023, hearing that it was too late to decline the plea offer and file a motion to suppress and have a jury trial.

As this court recently stated in *State v. Betts*, 31 Neb. App. 737, 745-46, 989 N.W.2d 441, 448 (2023):

> To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). To show that counsel's performance was deficient, the defendant must show counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Lessley, supra*. When a conviction is based upon a plea of no contest, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading no contest. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690

(2020). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner, supra.* The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.*

(a) Failure to File Motion to Suppress Statements

Rollie first argues that his counsel was ineffective for failing to move to suppress the statement he made to Officer Walters on July 6, 2021. Contrary to Rollie's claim that the statement is not in the record, a verbatim transcript of the interview is contained in the presentence investigation, which is available for our review. In his brief, Rollie argues that his trial counsel should have pursued a motion to suppress his statements because they were made involuntarily or were procured in violation of the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Although Rollie concedes that *Miranda* warnings were given before his interview and that he waived his *Miranda* rights, he claims that "[s]hortly after [Rollie] is asked for a DNA sample and he refuses, [Rollie] invokes his right to remain silent and will not answer any more questions. [Rollie] tells Officer Walters 'I'm not messing with you no more, man' three times in response to Officer Walters' questioning." Brief for appellant at 16. As we read Rollie's argument, he believes his trial counsel should have moved to suppress any information obtained after that point in the interview. But after reviewing the transcript from the interview, assuming without deciding, that Rollie's statements to Officer Walters following his request for a DNA sample was a proper invocation of his right to remain silent, there is simply nothing in the interview following Rollie's statement which is in any way incriminating in relation to the offenses for which he was charged. Instead, the remainder of the interview, before Walters terminated it, could generally be described as the State suggests, as a profanity-laced tirade about his dislike of police. When coupled with the fact that Rollie clearly indicated that he took the plea to avoid a habitual criminal enhancement, we find the record is sufficient to demonstrate that Rollie was not prejudiced by his counsel's failure to pursue a motion to suppress statements made to Officer Walters. This assignment of error fails.

(b) Failure to Investigate, Contact, or
Depose Witness Billy Gordon and Failure to
Depose Several Lincoln Police Officers

Rollie next assigns as error that his trial counsel was ineffective "by not investigating, contacting, or deposing witness Billy Gordon as requested by [Rollie]" and in "not deposing Lincoln Police Department officers to investigate for trial the inconsistencies in [the victim's] testimony." Brief for appellant at 5. He argues in his brief that trial counsel failed "to depose material witnesses Lincoln Department Officers James Everett, Gordon Walters, Ana Strein, Ryan

Sternhagen, Kenneth Koziol and David Lopez as requested by [Rollie]." Brief for appellant at 22. We find that the record is sufficient to review this claim.

Contrary to Rollie's current claims regarding counsel's ineffectiveness to investigate, contact, and/or depose certain named witnesses, Rollie affirmed during the plea hearing that he had discussed the charges and possible defenses with his counsel, that there was nothing that he had not told counsel that would help his defense, and that he did not need any additional time to consult with counsel. We recognize that Rollie expressed some dissatisfaction with his counsel but he admitted that there was nothing that he had asked his counsel to do that counsel failed or refused to do. Accordingly, we find that the record refutes Rollie's claim that his counsel was ineffective for failing to investigate, contact, and/or depose the named witnesses. This assigned error is without merit.

### (c) Trial Counsel's Advice During May 2023 Hearing

Rollie's final allegation is that his trial counsel was ineffective in "advising [Rollie] at the May 17, 2023[,] hearing that it was too late to decline the plea offer and file a motion to suppress and have a trial by jury." Brief for appellant at 5. We find that the record on direct appeal is sufficient to review this claim. We further find that this claim is refuted by the record.

At the start of the hearing, both defense counsel and Rollie indicated that Rollie did not want to accept the State's plea offer. However, during the course of the hearing, Rollie changed his mind, explaining that he sought to avoid habitual criminal enhancements on the charged offenses. And during the hearing, the court allowed Rollie and his counsel to consult several times and each time Rollie expressed that he wanted to accept the plea agreement. Further, during the hearing, the court reaffirmed to Rollie that "[y]ou don't need to apologize for taking time and asking questions." And, when asked if he needed more time to talk to counsel, Rollie responded, "Your Honor, I'm just ready to get it over with." At a later point during the hearing, after Rollie expressed dissatisfaction with his counsel, but was unable to identify the nature of that dissatisfaction, the following colloquy occurred between the court and Rollie:

> THE COURT: Okay. Do you want to take some time to think about that then? Cause I want to know if there's something he did wrong and that you're claiming he did wrong. I think we need to talk about that and get to the bottom of it.
> MR. ROLLIE: There was a whole thing – Your Honor . . . I don't got nothing to say.
> THE COURT: Okay.
> MR. ROLLIE: Sorry, I ain't got nothing to say.

Following that colloquy, Rollie reaffirmed that he still wanted to proceed with his plea.

In sum, at the start of the hearing, Rollie and his counsel represented that Rollie did not want to accept the plea agreement offered by the State. However, during the course of the hearing, Rollie changed his mind based upon his desire to avoid habitual criminal enhancements. And although the district court allowed Rollie to consult with counsel several times during the hearing and repeatedly offered Rollie more time to consider his plea, Rollie repeatedly reaffirmed his desire to continue with the plea agreement.

- 14 -

Additionally, we note that the plea agreement resulted in a substantial benefit to Rollie. Rollie was initially charged with four felonies and a misdemeanor. Because of the potential habitual criminal enhancements, Rollie was facing an aggregate mandatory minimum of 40 years' imprisonment and an aggregate maximum of 240 years' imprisonment on the felonies. The plea agreement resulted in Rollie pleading to a Class ID felony and a Class IIIA felony, with no habitual criminal enhancement, which reduced Rollie's potential aggregate sentence to a mandatory minimum of 3 years' imprisonment and a maximum of 53 years' imprisonment. We note that Rollie's plea also encompassed the State's dismissal of other charged offenses: a Class IIIA felony and two Class IV felonies.

In sum, based upon the fact that the trial judge provided Rollie numerous opportunities during the plea hearing to decline the plea offer, when considered with the fact that the trial judge admonished Rollie that he had a right to a jury trial and that, by pleading, he would waive that right, we find that the record refutes Rollie's allegation that his trial counsel was ineffective in telling him it was too late to decline the plea offer, to pursue a motion to suppress, and to proceed to trial, as that allegation belies the very specific admonitions made to the district court on the same subject matter. And as we stated earlier in this opinion, there was no prejudice associated with failing to pursue a motion to suppress Rollie's statement to Officer Walters. This claim fails and is not preserved.

## VI. CONCLUSION

Having determined that the sentences imposed by the district court were not an abuse of discretion and that Rollie's claims of ineffective assistance of trial counsel are refuted by the record, we affirm his convictions and sentences.

AFFIRMED.